## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM SEYMOUR JONES,      :
     Petitioner               :

                          :     CASE NO.  3:05-CV-2255

     v.                   :

                          :     (JUDGE NEALON)

SHANNON, ET AL.,         :
         Respondents      :

FILED
SCRANTON

JAN 2 2 2014

PER _____
            DEPUTY CLERK

### MEMORANDUM

On November 1, 2005, Petitioner, William Seymour Jones, who is currently confined at the Gilmer Federal Correctional Institution in Glenville, West Virginia, filed a habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging the calculation by the Pennsylvania Board of Probation and Parole ("the Board") of his parole violation sentence of backtime on his Dauphin County criminal case for being convicted of new federal charges. (Docs. 1-2). On February 24, 2006, this Court dismissed the petition because the claims were not yet ripe and were unexhausted. (Doc. 36). Petitioner's motions for reconsideration and to reopen, filed shortly thereafter, were denied. See (Docs. 37-40).

On April 25, 2013, and June 20, 2013, Petitioner filed motions for relief pursuant to Rule 60 of the Federal Rules of Civil Procedure. (Docs. 42, 45). He alleged that: (1) Respondents committed fraud by, inter alia, doctoring parole records to read "when available"; (2) 61 Pa.C.S. § 6138(a)(5.1) dictates that he serve his state backtime sentence before his federal sentence; (3) the Board relinquished jurisdiction to federal authorities; and (4) he exhausted remedies. (Id.). On November 13, 2013, the motions were denied. (Docs. 74-75). It was determined, initially, that the motions for relief were untimely. (Doc. 74). Nevertheless, this Court went on to address the merits of Petitioner's claims and found no basis for granting relief. (Id.). Specifically, it was

concluded that there was no evidence Respondents doctored records or otherwise committed fraud; that 61 Pa.C.S. § 6138(a)(5.1) does not apply to Petitioner's sentence because the statute's effective date was years after the Board's decision; that the Board did not relinquish jurisdiction to federal authorities by recalculating his parole maximum date, by issuing a detainer, or by transferring Petitioner between federal and state custody; and that because the service of his state backtime has not yet begun, Petitioner's challenge to the Board's recalculation remains unexhausted. (Id.).

Petitioner has since filed an affidavit, a supporting brief, a motion for clarification, a motion to take judicial notice, and a motion for reconsideration, all related to and/or challenging this Court's decision dated November 13, 2013. See (Docs. 76-80).[1]  For the reasons set forth below, the motions will be denied.

## Background

On July 13, 2000, Petitioner, who was on parole for a 1981 Robbery conviction in Pennsylvania, was arrested in New Jersey for Hindering and drug-related charges. See (Doc. 74, pp. 2-4, citing (Doc. 36, pp. 2-5).[2]  On October 16, 2000, federal detainers were lodged against Petitioner for charges under the Hobbs Act.[3]  See USA v. Jones, et al., No. 2:00-cr-660 (E.D. Pa.

---

[1]The page numbers assigned to Petitioner's documents by the Clerk of Court will be used herein.  See (Docs. 76-80).

[2]See the Memorandum issued November 13, 2013 for a complete factual and procedural history.  (Doc. 74), citing (Doc. 36).

[3]The Hobbs "Act subjects a person to criminal liability if he 'in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do.'"  Sekhar v. United States, 133 S. Ct. 2720, 2723 (2013) (quoting 18 U.S.C. §1951(a)).

filed October 16, 2000). The United States District Court for the Eastern District of

Pennsylvania ordered that he be produced for an arraignment on November 30, 2000. Id. at

(Docs. 13, 23). On December 15, 2000, Petitioner pled guilty to Hindering in New Jersey and

was sentenced to time-served. (Doc. 74, pp. 2-4, citing (Doc. 36, pp. 2-5). The same day, he

waived extradition to Pennsylvania to answer to a state parole violation. (Id.). He was sentenced

on February 23, 2001, as a technical parole violator and ordered to serve six (6) months backtime

when available. (Id.). On July 12, 2001, Petitioner was allowed a temporary absence to answer

to the federal charges in the United States District Court for the Eastern District of Pennsylvania.

(Id.). After his federal sentence of 521 months imprisonment, followed by five (5) years of

supervised release, was issued in 2003, he was returned to state prison on October 2, 2003. (Doc.

74, pp. 2-4), citing (Doc. 36, pp. 2-5). A second parole violation hearing, based on the new

federal conviction, was held on January 9, 2004. (Id.). Parole was revoked on Petitioner's

Pennsylvania sentence and the Board ordered him to serve seventy-two (72) months backtime

when available. (Id.). In 2004 and 2005, Petitioner contested the Board's order in the state

courts. (Id.). On June 29, 2005, and November 1, 2005, the United States District Court for the

Eastern District of Pennsylvania issued Orders directing the United States Marshal and the

Warden of the state correctional institution where Petitioner was being held to produce Petitioner

for a resentencing hearing. See USA v. Jones, et al., No. 2:00-cr-660 (E.D. Pa.) at (Docs. 205-

206). He was resentenced on November 29, 2005, to 494 months imprisonment and five (5)

years of supervised release. Id. at (Doc. 208). On March 16, 2006, the federal district court

again directed that he be produced before the court, this time for an evidentiary hearing on

3

Petitioner's motion to vacate.[4] Id. at (Doc. 223).  By March 23, 2007, Petitioner was confined in

a federal correctional institution, and the Board had issued a warrant to act as a detainer.  See

(Doc. 42, Exs. D-E).

## Standard of Review

"A motion for reconsideration is a device of limited utility."  Bartelli v. Fedak, 2006 U.S.

Dist. LEXIS 29697, *4 (M.D. Pa. 2006) (Kosik, J.).  It may be used only to correct manifest

errors of law or fact or to present newly discovered precedent or evidence.  Harasco Corp. v.

Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986); Sibio v.

Borough of Dunmore, 2007 U.S. Dist. LEXIS 35380, *4 (M.D. Pa. 2007) (Caputo, J.).  A motion

for reconsideration may also be appropriate in instances where the court has misunderstood a

party, or has made a decision outside the adversarial issues presented to the court, or has made an

error not of reasoning, but of apprehension.  See Rohrbach v. AT&T Nassau Metals Corp., 902

F. Supp. 523, 527 (M.D. Pa. 1995) (Vanaskie, J.), vacated in part on other grounds on

reconsideration, 915 F. Supp. 712 (M.D. Pa. 1996).  "Federal district courts should grant such

motions sparingly because of their strong interest in finality of judgment."  Bartelli, 2006 U.S.

Dist. LEXIS at *4, citing Continental Casualty Co. v. Diversified Indus., Inc., 884 F. Supp. 937,

943 (E.D. Pa. 1995).  "In order to prevail, a party seeking reconsideration must demonstrate one

of the following: (1) an intervening change in the controlling law; (2) the availability of new

evidence that was not available previously; or (3) the need to correct a clear error of law or fact

---

[4]The United States District Court for the Eastern District of Pennsylvania denied the motion on June 23, 2006. USA v. Jones, et al., No. 2:00-cr-660 (E.D. Pa.) at (Doc. 233). The Third Circuit Court of Appeals subsequently denied a certificate of appealability, finding that the motion to vacate lacked merit. Id. at (Doc. 245).

4

or to prevent manifest injustice." Rinaldi v. Sniezek, 2008 U.S. Dist. LEXIS 46547, *2 (M.D.

Pa. 2008) (Rambo, J.) (citing Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir.

1999)).  A motion for reconsideration is not to be used as a vehicle for the losing party to rehash

arguments already disposed of or as an attempt to relitigate a point of disagreement between the

court and the litigant.  See Turner v. Apker, 133 Fed. Appx. 849, 850 (3d Cir. 2005); Sibio, 2007

U.S. Dist. LEXIS at 35383.  "Such motions are therefore not appropriate if the movant intends

only that the court hear new arguments or supporting facts."  Dougherty v. Farmers New Century

Insurance Company, 2007 U.S. Dist. LEXIS 26058, *6 (M.D. Pa. 2007) (Nealon, J.) (citing Van

Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991), cert. denied, 506 U.S. 828

(1992)).

**Discussion**

        This Court has thoroughly reviewed all of Petitioner's filings since November 13, 2013.

See (Docs. 76-80).  He makes a number of arguments, citing cases, but fails to demonstrate an

intervening change in controlling law, the availability of new evidence, or the need to correct a

clear error of law or fact.  See Rinaldi, 2008 U.S. Dist. LEXIS 46547 at *2.  Rather, his motions

are primarily used as an attempt to relitigate his claims.  See Turner, 133 Fed. Appx. at 850.

Accordingly, his motions will be denied.

        A.        **Timeliness Objections**

        Petitioner argues that this Court overrode Congress's legislative intent not to impose a

time limitation in Rule 60(b)(6) by requiring that his motion be filed within a reasonable time.

(Doc. 80, p. 10).  This claim is without merit because the statute itself imposes the "reasonable

time" requirement.  See FED. R. CIV. P. 60(c)(1); (Doc. 74, p. 14 n.11) (rejecting Petitioner's

argument that Rule 60(b)(6) has no time limitation), citing Silfies v. Walsh, 2013 U.S. Dist. LEXIS 84503, *4 (M.D. Pa. 2013) (Kane, J.).

He further asserts that his Rule 60(b) motion was timely because it presented a jurisdictional question that can be raised at any time.[5] (Doc. 76, pp. 1, 7); (Doc. 77, p. 1); (Doc. 78, p. 8). He contends that a court does not have the discretion to ignore a lack of subject matter jurisdiction and cites to Rule 60(b)(4). (Doc. 78, pp. 2-3), citing Joyce v. United States, 474 F.2d 215 (3d Cir. 1973) (finding that the district court lacked subject matter jurisdiction); FED. R. CIV. P. 60(B)(4). Petitioner's argument is unpersuasive. See Gray v. United States, 385 Fed. Appx. 160, 162 (3d Cir. 2010) (rejecting the proposition "that a claim that the court lacked jurisdiction can be brought at anytime, and 'specifically challenged under Rule 60(b)'"). "[A]lthough the reasonable-time requirement does not apply to a motion to reopen a void judgment under Rule 60(b)(4), a judgment is void only if the court that rendered it lacked jurisdiction of the subject matter...." Azubuko v. Bunker Hill Cmty. College, 442 Fed. Appx. 643, 645 (3d Cir. 2011) (internal citations omitted). Accord United States v. Dailide, 316 F.3d 611, 617 (6th Cir. 2003) (holding that a motion under Rule 60(b)(4) challenging a court's subject matter jurisdiction "is only cognizable if brought within a reasonable time"). Petitioner's Rule 60 motion was not filed under subsection (b)(4); rather, he sought relief under subsection (b)(6). Further, he did not allege that the judgment is void; rather, he claimed that this Court had jurisdiction to decide the habeas petition. This ground for reconsideration will therefore be rejected.

In disagreeing with the timeliness conclusions, Petitioner refers to a number of cases.

---

[5]To the extent Petitioner bases this argument on jurisdictional grounds, his claim will be addressed in a separate section herein.

(Doc. 76, pp. 9-10), citing United States v. 119.67 Acres of Land, 663 F.2d 1328, 1331 (5th Cir.

1981) (determining that until "the navigational servitude was asserted, the United States would

have no reason to realize that it had been compromised" and in light of the "significant

governmental and public rights involved in this controversy", a four-year delay was not

unreasonable); Schwartz v. United States, 129 F.R.D. 117, 121 (D. Md. 1990) (Considering the

"changed circumstances" resulting from intervening case law, the court concluded that a six-year

delay was reasonable.); Lafferty v. District of Columbia, 277 F.2d 348, 351 (D.C. Cir. 1960)

(finding that a two and a half year delay was not unreasonable); Pierre v. Bernuth, Lembcke Co.,

20 F.R.D. 116, 118 (D.N.Y. 1956) (concluding that a three-year delay was reasonable when the

plaintiff's attorney acted with reasonable diligence); (Doc. 80, pp. 3, 6, 12), citing United States

v. Holtzman, 762 F.2d 720, 725 (9th Cir. 1985) (explaining "[t]his case presents an uncommon

factual picture" and finding that the Rule 60 motion filed after five (5) years was made within a

reasonable time because judgment errors caused the delay).  Significantly, each of these cases

involved a shorter period of time than that at issue here and none of them present "an intervening

change in the controlling law."  See Rinaldi, 2008 U.S. Dist. LEXIS 46547 at *2.

Next, Petitioner argues that his pro se prisoner status is an exceptional circumstance that

renders his motion timely.  (Doc. 80, pp. 10-11).  On the contrary, "Petitioner's pro se status does

not excuse him from complying with procedural rules."  Devon v. Vaughn, 1995 U.S. Dist.

LEXIS 5559, *4 (E.D. Pa. 1995) (finding that the pro se petitioner did not act reasonably in filing

his Rule 60(b) motion "more than six (6) months after learning of the court's entry of judgment

against him"); Wallace v. Hayman, 2012 U.S. Dist. LEXIS 127545, *4 (D.N.J. 2012)

(determining that a plaintiff's status as an incarcerated pro se litigant unfamiliar with court

procedure does not meet the extraordinary-circumstances requirement of Rule 60(b)(6)).

Petitioner also attempts to relitigate his request for equitable tolling. (Doc. 80, pp. 11-12).  As originally explained, however, Rule 6 of the Federal Rules of Civil Procedure prevents a court from extending the time to act under Rule 60(b).  <u>See</u> (Doc. 74, pp. 13-14), <u>citing</u> FED. R. CIV. P. 6(b)(2); <u>James v. Vaughn</u>, 2007 U.S. Dist. LEXIS 19043, *2 (E.D. Pa. 2007).

Finally, Petitioner argues that this Court had jurisdiction under Rule 15(c)(2) and asks for clarification as to why his Rule 60(b) motion was untimely when it relates back to the timely filed habeas petition.  (Doc. 78, pp. 5-6); (Doc. 80, p. 22).  He cites a number of cases, but each of these courts were addressing the habeas petition, not a motion to reopen.  As this Court explained in the Memorandum denying relief, "a petitioner may not use Rule 15 to amend his previously denied motion to vacate until the judgment is set aside or vacated." (Doc. 74, p. 10 n.10), <u>citing</u> <u>Dominos Pizza, LLC v. Deak</u>, 2013 U.S. App. LEXIS 16524, *4-6 (3d Cir. 2013) (refusing to analyze the Rule 15 and 60(b) motions under the more relaxed standards for amending pleadings); <u>Winkelman v. United States</u>, 2011 U.S. Dist. LEXIS 121351, *3-4 (M.D. Pa. 2011) (Kane, J.).

Petitioner has failed to meet the high burden of establishing adequate grounds for reconsideration of this Court's conclusion that the Rule 60(b) motion was untimely filed. Moreover, because the motion was addressed and denied on the merits, any error in the timeliness findings would not necessitate a different result.  <u>See</u> <u>Brown v. Zickefoose</u>, 2011 U.S. Dist. LEXIS 121801, *4 (D.N.J. 2011) (requiring a party seeking reconsideration to "show that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision").  The requests for reconsideration will be denied on these grounds.

### B.   Fraud Objections

Petitioner seeks reconsideration because he disagrees with this Court's conclusions regarding fraud. (Doc. 80, pp. 13-16). He reasserts his claim that "when available" does not appear on his exhibits and alleges that this Court did not consider the conflicting submissions. (Id.).[6] Because a motion to reconsider may not be used to relitigate a claim, this basis for reconsideration will be denied. See Turner, 133 Fed. Appx. at 850.

Additionally, according to his affidavit, Petitioner now appears to be alleging that Respondents' fraud for doctoring records to read "when available" relates to the Board's parole violation sentence in 2001 for his New Jersey conviction for hindering. (Doc. 76, pp. 3-5). Despite this contention, there was no misunderstanding about which alleged fraud Petitioner was "talking about" in his Rule 60(b) motion. (Id.).

In his motions for relief, Petitioner alleged that Respondents "lied to this Court in 2005" and referred to the Board's decision issued on August 25, 2004. (Doc. 42, p. 4); (Doc. 45, pp. 1-2). Also, in a letter dated October 17, 2013, Petitioner specifically cited to the Board's decision from August 25, 2004, which he stated had "no order of when available on it." (Doc. 71, p. 4 and Ex. B). He also alleged that Respondents' Exhibit M, which is a copy of the Board's decision dated December 30, 2005 rescinding the Board's action of August 25, 2004, says nothing about "when available." See (Doc. 71, p. 3), citing (Doc. 68, Ex. M). These orders were addressed in this Court's decision denying the Rule 60(b) motion, and no error or

---

[6]To the extent Petitioner questions how the United States District Court for the Eastern District of Pennsylvania could commit him to the custody of the United States Attorney General to serve his sentence, but then return him to state prison, and cites it as proof that Respondents doctored records to read "when available," see (Doc. 76, p. 5-6), the matter will be addressed below.

misapprehension occurred as to warrant reconsideration.

Moreover, even if the 2001 order was the fraud to which Petitioner was referring in his Rule 60(b) motion, his claim would offer no relief because the habeas decision he sought to reopen dealt with the Board's action in 2004. See FED. R. CIV. P. 60(b); (Doc. 36). Accordingly, any alleged fraud years earlier on a separate issue had no bearing on this Court's finding in 2006 that his habeas claims were premature and unexhausted. See Brown v. Beard, 2009 U.S. Dist. LEXIS 87913, *3-4 (E.D. Pa. 2009) (stating that a motion for reconsideration may be granted if there is a need "to correct manifest errors of law or fact **upon which the judgment was based**") (emphasis added), citing Harasco Corp., 779 F.2d at 909.

The motion to reconsider the fraud determinations will be denied.

### C.    Objections Regarding Transfers and Relinquished Jurisdiction

Petitioner asks this Court to reconsider its conclusion that jurisdiction was not relinquished. (Doc. 80, pp. 7, 19), citing Shields v. Beto, 370 F.2d 1003, 1005-06 (5th Cir. 1967); White v. Pearlman, 42 F.2d 788, 789 (10th Cir. 1930). He refers to his transfers between state and federal custody,[7] and to the detainers to support his request. See (Doc. 76, p. 12); (Doc. 80, pp. 4-6, 19-22).

The two detainers in the record confirm that jurisdiction was not relinquished. The

---

[7]Petitioner claims that he was wrongfully transferred between state and federal custody in 2001, 2003, 2005, 2006, and 2007. See (Docs. 21-22, 36, 74, and 76, p. 8). The United States District Court for the Eastern District of Pennsylvania rejected Petitioner's argument, raised in a section 2255 motion to vacate filed in that Court, that his transfer to federal custody for prosecution violated the anti-shuttling provision of the Interstate Agreement on Detainers. See USA v. Jones, et al., No. 2:00-cr-660 (E.D. Pa.) at (Doc. 233)). This Court will not reconsider the decision of another Court and, regardless, any transfer prior to federal sentencing does not support his allegations that jurisdiction was relinquished.

federal detainer is dated October 1, 2003, and directs the state to notify the federal authorities

once Petitioner is released so that he may begin serving his federal sentence. See (Doc. 71, Ex.

A). It is proof that Petitioner was in state custody[8] at the time of his federal sentence on

September 26, 2003, and had to be returned to state prison. The detainer, directed to "SCI

Graterford" (state authorities) from the United States Marshal (federal authorities), states that

Petitioner **"is currently in your custody"** and asks to be notified prior to "release from your

custody ... so that we may assume custody of the subject for service of his Federal sentence of

imprisonment." (Id.) (emphasis added). The detainer also establishes that the federal authorities

had no intention of relinquishing jurisdiction to the state. Compare Shields, 370 F.2d at 1005-06

(holding that Texas waived jurisdiction by extraditing the prisoner to Louisiana because Texas

showed no interest in his return, either by agreement, by detainer, or any other affirmative

action).

The second detainer was issued by the Board on March 23, 2007, and places a detainer on

Petitioner for his parole violation. See (Doc. 42, Ex. E). It appears that Petitioner was in federal

custody by this date and had begun serving his federal sentence because the Board did not have

custody of Petitioner. (Id.) (ordering that Petitioner be **"returned** ... to the actual custody within

the Pennsylvania enclosure") (emphasis added). The Board's detainer is evidence that it did not

relinquish jurisdiction to the federal authorities, nor have any intention of doing so. See

Massaquoi v. Smith, 179 Fed. Appx. 839, 841-42 (3d Cir. 2006) (holding that the Board's

detainer was valid and that it did not lose jurisdiction by releasing the prisoner to first serve his

---

[8]Although in state custody, Petitioner was not serving the parole violation sentence
challenged in the habeas petition as it was not issued until May 6, 2004.

11

federal sentence).

In denying Petitioner's claim that the Board's detainer was unlawful and that jurisdiction was relinquished by his transfers, this Court explained:

> Petitioner's transfer between state and federal custody also fails to support his Rule 60(b) motion because "it is well settled that either sovereign may voluntarily surrender a prisoner to the other without loss of jurisdiction and without the prisoner's consent." [Bellochio v. Commonwealth, Pennsylvania Bd. of Probation & Parole, 559 A.2d 1024, 1026-27 (Pa. Commw. Ct. 1989)]. See also Arce v. Outlaw, 2007 U.S. Dist. LEXIS 1838, *13 (M.D. Pa. 2007) (Muir, J.) (concluding that because the petitioner would not begin serving his state backtime sentence until after his new federal sentence expired, his transfer to federal custody and the Board's detainer requiring that he be returned to state custody after completing his federal sentence were not unlawful).

(Doc. 74, p. 25).  On reconsideration, Petitioner argues that this Court misapplied Bellochio and Arce because he experienced multiple transfers between state and federal custody. (Doc. 76, p. 11).  However, neither court limited its holding to a single transfer and Petitioner fails to cite any case that would establish that this Court made a clear error of law.  See Rinaldi, 2008 U.S. Dist. LEXIS 46547 at *2.

Petitioner was allowed a temporary absence to answer federal charges in the United States District Court for the Eastern District of Pennsylvania.  Although he was in physical custody of federal authorities, he remained in the primary custody of the state.  See Chambers v. Holland, 920 F. Supp. 618, 622 (M.D. Pa. 1996) (McClure, J.) ("Producing a state prisoner under writ of habeas corpus ad prosequendum to answer federal charges does not relinquish state custody."), affirmed by, 100 F.3d 946 (3d Cir. 1996); McGough v. Meeks, 2013 U.S. Dist. LEXIS 170379, *9-14 (W.D. Pa. 2013) (determining that the petitioner, who was serving a state sentence, was in the physical custody of federal authorities pursuant to the writ of habeas corpus

12

ad prosequendum, but remained in the primary custody of the state because he still was serving the term of imprisonment imposed in the state case).  Until Pennsylvania relinquished jurisdiction, Petitioner remained "on loan" to the federal authorities and had to be returned.  See Harris v. Rectenwald, 2013 U.S. Dist. LEXIS 6068, *6-7 (M.D. Pa. 2013) (Kane, J.) (holding the state authorities retained primary custody over the prisoner and any time he spent in the custody of the United States Marshals Service pursuant to the writ of habeas corpus ad prosequendum could not be credited toward his federal sentence).  His allegation that he could only have remained in state custody if he was recommitted to serve his parole sentence is therefore without merit.  See (Doc. 76, p. 6).

Even if Petitioner was improperly returned to a state prison, "a mistaken release does not prevent a government from reincarcerating a prisoner who has time to serve. The question is whether he should be given credit against his sentence for the time he was at liberty." Vega v. United States, 493 F.3d 310, 315-16 (3d Cir. 2007), quoting White, 42 F.2d at 789 ("There is no doubt of the power of the government to recommit a prisoner who is released or discharged by mistake, where his sentence would not have expired if he had remained in confinement.").  Apart from Petitioner's allegations as to what prison he was being housed in between 2003 and 2007, there is nothing in the record to establish what time was credited toward his other state sentences or to his federal sentence.  Notably, the Attorney General, and by extension the Bureau of Prisons ("BOP"), may designate a state facility for service of a federal sentence.  See Queen v. Romine, 2000 U.S. Dist. LEXIS 22843, *10-11 (M.D. Pa. 2000) (Conaboy, J.) ("The Attorney General is responsible for computing federal sentences" and has delegated this authority to the Director of the BOP); Chambers v. Holland, 920 F. Supp. 618, 622 (M.D. Pa. 1996) (McClure, J.) ("When a

federal court sentences a defendant in state custody at the time of sentencing, 'the federal sentence may commence if and when the Attorney General or the Bureau agrees to designate the state facility for service of the federal sentence.'"), affirmed by, 100 F.3d 946 (3d Cir. 1996); 18 U.S.C. § 3621 (providing that the BOP "may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable..."). Petitioner's request for this Court to take judicial notice that SCI- Graterford, SCI- Frackville, and SCI- Greene are not federal custody prisons, nor under the jurisdiction of the United States Attorney General, see (Doc. 74, p. 5), is therefore unnecessary. His contention that a state prison "is not a federal holding for the U.S. Marshalls [sic]" also fails to justify reconsideration. See (Doc. 76, p. 8), citing Smith v. Swope, 91 F.2d 260, 262 (9th Cir. 1937) (concluding that a prisoner is deemed to be serving his sentence from the date he is ordered to serve it and is in the custody of the Marshal under the commitment, regardless of whether the Marshal neglects to place the prisoner in the proper custody).

Petitioner's suggestion that this Court's decision conflicts with a prior ruling in Gomori is also incorrect. (Doc. 79, pp. 1-4), citing Gomori v. Arnold, 405 F. Supp. 141, 143 (M.D. Pa. 1975) (Nealon, J.) (stating that "[o]nce a federal offender is sentenced, the sentencing judge must commit him to the custody of the Attorney General who designates the particular institution for service of the sentence", but that "[w]here a federal sentence is imposed while the prisoner is serving a state sentence, the federal sentence does not begin to run until the offender is received in federal custody to commence serving that sentence"). In that case, "[t]he sole issue presented

14

for disposition involve[d] the effective date of service of a six-year federal sentence." Gomori, 405 F. Supp. at 141. That issue is not presently before this Court. The question was not presented in the original habeas petition, the more recent motions for relief, or in the Rule 60(b) motion; therefore, it is not a basis for reconsideration.

Furthermore, once the BOP's decision is made as to Petitioner's federal sentence computation and the amount of prior custody credit available to him under 18 U.S.C. § 3585(b), see Mills v. Quintana, 408 Fed. Appx. 533, 535 n.3 (3d Cir. 2010) (explaining that the "BOP is the agency responsible for implementing and applying federal law concerning the computation of federal sentences"), Petitioner must exhaust his administrative remedies with the BOP before filing a petition for writ of habeas corpus." Harris v. Bureau of Prisons (BOP) Fed., 787 F. Supp. 2d 350, 360 (W.D. Pa. 2011) (citing Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996)). After administrative remedies are exhausted, Petitioner may challenge the BOP's decision in a habeas petition brought in the district of confinement under 28 U.S.C. § 2241. See Mills, 408 Fed. Appx. at 535 n.3 (stating that the prisoner "properly brought his challenge to the BOP's execution of his federal sentence in the district of confinement" after seeking "relief through the BOP's administrative remedy process"); George v. Longley, 2011 U.S. Dist. LEXIS 37266, *24 (W.D. Pa. 2011).

Next, Petitioner alleges that he should not have been returned to state custody after his federal sentence because the Eastern District Court committed him to the custody of the United States Attorney General to serve his term of imprisonment.[9] (Doc. 77, pp. 2-4), citing (Doc. 71,

---

[9]Petitioner confuses the federal detainer as the judgment and commitment order. The judgment and commitment order committed Petitioner "to the custody of the United States Bureau of Prisons", see (Doc. 68, Ex. I), while the detainer states that he was committed "to the

Ex. A); (Doc. 80, p. 20).  He argues that this Court failed to consider the judgment and

commitment order.  (Doc. 78, pp. 3-9), <u>citing</u> (Doc. 71, Ex. A); (Doc. 79, pp. 1-3).  As previously

explained, his commitment to the custody of the United States Attorney General does not mean

that he had to remain in federal prison.  Petitioner was so committed because the Attorney

General, and by extension the BOP, is responsible for computing federal sentences.  <u>See</u> <u>Queen</u>,

2000 U.S. Dist. LEXIS 22843 at *10-11, <u>citing</u> <u>United States v. Wilson</u>, 503 U.S. 329, 334-35

("Federal defendants do not always begin to serve their sentences immediately.") (1992); 18

U.S.C. § 3585; 28 C.F.R. § 0.96.  His reliance on this language is therefore misplaced.

     Finally, Petitioner asserts that he cannot be required to serve his sentence in installments.

(Doc. 76, p. 6), <u>citing</u> <u>Trant v. United States</u>, 90 F.2d 718 (7th Cir. 1937) (determining when the

service of a sentence commences).  Despite his claim, "the common law rule of continuous

service doctrine is not constitutionally required, ...[n]or apparently is it required by any federal

statute."  <u>Harris v. Quintana</u>, 2012 U.S. Dist. LEXIS 101100, *54 (W.D. Pa. 2012).  Further, this

rule is not implicated for two reasons.  First, Petitioner's total time of incarceration in both

federal and state prison has not be increased by his transfers.  <u>See</u> <u>Boston v. AG of the United</u>

<u>States</u>, 210 Fed. Appx. 190, 193 (3d Cir. 2006); <u>Nelson v. United States</u>, 2006 U.S. Dist. LEXIS

96011, *6-14 (W.D. Pa. 2006) (rejecting the habeas petitioner's arguments that he was

improperly transferred between state and federal custody because, <u>inter alia</u>, "his period of

incarceration has not been extended in any way due to an erroneous transfer to state custody"),

---

custody of the U.S. Attorney General", <u>see</u> (Doc. 71, Ex. A).  <u>But see</u> 28 C.F.R. § 0.96 ("The
Director of the Bureau of Prisons is authorized to exercise or perform any of the authority,
functions, or duties conferred or imposed upon the Attorney General by any law relating to the
commitment, control, or treatment of persons....").

adopted by, 2007 U.S. Dist. LEXIS 26820 (W.D. Pa. 2007).  His allegation that he is being

"punished" by multiple transfers, see (Doc. 76, p. 13), is consequently without merit.  Second,

because Petitioner was in primary custody of the state, not the federal government, when his

federal sentence was imposed, his federal sentence did not commence until the state relinquished

primary custody.  See Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002) (explaining that

the federal government may borrow a state prisoner for the purposes of indicting, arraigning,

trying, and sentencing him, and that the prisoner "is considered to remain in the primary custody

of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction"); Hawk v.

Sherman, 2008 U.S. Dist. LEXIS 123505, *23 (W.D. Pa. 2008) (reasoning that the "BOP did not

designate and transport [the prisoner] to a federal prison, commence his sentence, then stop it and

physically transfer him to a state prison"; rather, "when the BOP initially calculated his sentence

in September 1998, it retrospectively determined that his sentence commenced on ... July 21,

1998").  Compare Smith, 91 F.2d at 262 ("Whether the state might have surrendered and the

United States accepted jurisdiction over the prisoner for a limited period or purpose, and

whether, under proper orders of the court, the prisoner's state and federal sentences might be

staggered, interwoven, or served piecemeal, are questions not presented by the record in this

case.").

Petitioner has failed to demonstrate any reason to reconsider this Court's findings that

neither the Board nor the federal authorities relinquished jurisdiction.

### D.    Due Process Objections

Petitioner claims that he was denied due process when his parole maximum date was

rescinded without a hearing.  (Doc. 76, pp. 13-14), citing Lanier v. Fair, 876 F.2d 243, 253 (1st

Cir. 1989) (holding that the appellant had an established liberty interest in his reserve parole date). He contends that this Court disregarded his liberty interest when addressing the matter. (Doc. 80, pp. 17-19), citing Morrissey v. Brewer, 408 U.S. 471 (1972) (holding that a parolee has limited due process protections for parole revocations).

Although due process protections extend to parole revocations, the Third Circuit Court of Appeals has held that "there is no protected liberty interest in anticipated parole" and "likewise no protected liberty interest in the expectation of release on an erroneously calculated release date." Evans v. Sec'y Pa. Dep't of Corr., 645 F.3d 650, 664-65 (3d Cir. 2011) (citing Jago v. Van Curen, 454 U.S. 14 (1981)). See also Baldwin v. DiGuglielmo, 2004 U.S. Dist. LEXIS 13993, *6 n.3 (E.D. Pa. 2004) (finding that until the Board's order granting parole is executed, which only occurs once the prisoner signs the order acknowledging the required conditions of parole, there is no liberty interest of due process), adopted by 2004 U.S. Dist. LEXIS 18397 (E.D. Pa. 2004); Tubbs v. Pennsylvania Bd. of Probation & Parole, 152 Pa. Commw. 627, 630 (Pa. Commw. Ct. 1993) (holding that the Board's decision to rescind an unexecuted tentative parole release date is not subject to judicial review); Green v. Commonwealth, Pennsylvania Bd. of Probation & Parole, 101 Pa. Commw. 132, 136 (Pa. Commw. Ct. 1986) (determining that because the prisoner's parole was never executed, the Board could properly rescind a parole order without a prior hearing and counsel representation). Accordingly, his reconsideration request on due process grounds will be denied.[10]

### E.    Miscellaneous Objections

---

[10]Petitioner's argument that Rule 4 of the Federal Rules of Civil Procedure requires that he be served with notice of the rescind order is also without merit as this rule applies to the initiation of a civil complaint. (Doc. 80, p. 4).

Petitioner asks this Court to reconsider its decision denying his motion for counsel, arguing that an evidentiary hearing should have been scheduled to address the difference in Respondents' exhibits regarding "when available." (Doc. 80, pp. 6-7). For the reasons explained in the Memorandum dated November 12, 2013, (Doc. 74), and herein, Petitioner's claims lack arguable merit and there was no need for an evidentiary hearing as this conclusion was based on an independent review of the records. See Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002) (stating that the initial determination to be made by the court in evaluating the expenditure of the "precious commodity" of volunteer counsel is whether the case has some arguable merit in fact and law); Kirnon v. Klopotoski, 2010 U.S. Dist. LEXIS 121137, *20-21 (E.D. Pa. 2010) (finding that there was no need for an evidentiary hearing on the petitioner's Rule 60(b) motion). To the extent Petitioner seeks to relitigate this and other claims,[11] a motion for reconsideration is not appropriate. See Turner, 133 Fed. Appx. at 850.

He also tries to offer new claims. Specifically, Petitioner alleges that he did not waive extradition, nor benefit from a hearing on the same. (Doc. 76, pp. 2, 12). As this issue was not presented in the Rule 60(b) motion, it is not a basis for reconsideration. See Dougherty, 2007 U.S. Dist. LEXIS 26058 at *6.

Further, Petitioner contends that he "was tormented in state custody", placed in the security max unit with rubber seals around the doors, and punished for the detainer by way of his federal custody level. See (Doc. 79, pp. 2-3); (Doc. 80, p. 8). These claims are not cognizable under federal habeas corpus because the allegations concerns the conditions of confinement. See

---

[11]Petitioner also attempts to reargue whether his habeas claims were exhausted. (Doc. 80, pp. 3-4, 22-25). He asserts that this Court should have granted his Rule 60(b) motion and that he disagrees with this Court's decision to dismiss his habeas petition as premature. (Id. at pp. 1-2).

In re Belt, 426 Fed. Appx. 119, 120 (3d Cir. 2011); Cohen v. Lappin, 402 Fed. Appx. 674 (3d

Cir. 2010) (affirming the district court's order dismissing the habeas corpus petition and the

motions filed under Rules 59(e) and 60(b) because the petitioner's challenge that his security

designation and custody classification were adversely impacted by a detainer must be brought in

a civil rights complaint).

**Conclusion**

     Petitioner's motions to clarify, to take judicial notice, and for reconsideration will be

denied.  See (Docs. 76-80).  He fails to demonstrate an intervening change in controlling law, the

availability of new evidence, or the need to correct a clear error of law or fact.  His motions are

largely an attempt to relitigate his claims and offer new arguments, which is not a basis for

reconsideration.  Consequently, his motions will be denied.

     A separate Order will be issued.

**Date:**  January 21, 2014                     **United States District Judge**